## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **Leigh, King, Norton & Underwood, LLC,** <br> **on behalf of itself and all others similarly** <br> **situated in the United States of America,** <br> <br>     **Plaintiff,** <br> <br> vs. <br> <br> **Regions Financial** <br> **Corporation and Regions** <br> **Bank,** <br> <br> <br>     **Defendants.** | **Civil Action No.:** <br> <br> **Class Action** <br> <br> <br> **Jury Trial Demanded** |

## COMPLAINT

Now comes Plaintiff Leigh, King, Norton & Underwood, LLC, on behalf of itself and all other similarly situated residents of the United States of America and allege as follows:

### PRELIMINARY STATEMENT

1.  This class action complaint is filed to recover damages resulting from unfair and wrongful actions by the Defendants. Plaintiff, for itself and all others similarly situated, bring this action for damages and injunctive relief to end the Defendants' wrongful conduct and to prevent further losses to Plaintiff and the Class it seeks to represent.

2.  Defendants are the largest bank and holding company head quartered in the state of Alabama and are one of the top 23 largest banks in the United States. Defendants are Fortune 500 corporations. Defendants are the largest deposit holder bank and holding company in the state of Alabama. Defendants claim assets exceeding $125 billion.

1

3. Plaintiff and the Class Members are agents who assisted and represented Defendants' customers who applied for loan funds under the recently enacted CARES Act by the United States government.

4. The Defendants failed and refused to compensate Plaintiff and the Class Members, and continue to do so, for their role as CARES Act loan applicant agents.

5. The Plaintiff filed this action, individually and on behalf of all others similarly situated, seeking damages and injunctive relief to stop the Defendants from continuing to engage in the wrongful conduct described herein.

## PARTIES

6. Plaintiff Leigh, King, Norton & Underwood, LLC ("LKNU") is a certified public accounting firm and is an Alabama limited liability company with its principal place of business located at 603 East 2nd Street, Sheffield, Alabama 35660.

7. Regions Financial Corporation is a bank holding company headquartered in the Regions Center in Birmingham, Alabama ("Regions" or "Defendant" or "Defendants").

8. Regions Bank is a subsidiary of Regions Financial Corporation headquartered in the Regions Center in Birmingham, Alabama ("Regions" or "Defendant" or "Defendants").

9. Upon information and belief, the Defendants acted and continue to act on behalf of each other as alter-egos, representatives and/or agents of each other for the actions alleged herein.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because upon information and belief there are 100 or more Class Members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

11. This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that the class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical, there are substantial questions of law and fact common to the class, and this case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    a. Questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

    b. A class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    c. The relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

    d. There are no unusual difficulties foreseen in the management of this class action.

12. The Court has personal jurisdiction over Plaintiff, which has at least minimum contacts as it is domiciled in this district, conducts business there and has availed itself of the laws of Alabama.

13. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

14. Venue in the United States District Court for the Northern District of Alabama is proper because Defendant is headquartered here, transacts business within this District and a substantial part of the events giving rise to the claims at issue in this Complaint occurred in this District.

15. All conditions precedent to this action have occurred, been performed, or have been waived.

**FACTUAL ALLEGATIONS**

16.    The Paycheck Protection Program ("PPP") was authorized by Congress and the President of the United States under the Coronavirus Aid, Relief, and Economic Security Act, H.R. 748 ("CARES Act"), and is a loan program designed to provide a direct incentive for small businesses to keep their workers on payroll.

17.    Loans under the PPP are one hundred percent (100%) guaranteed by the Small Business Administration ("SBA"), and the full principal amount of the loans and any accrued interest may qualify for loan forgiveness. Each loan is processed by a participating lender and submitted to the SBA, for which the participating lender is compensated by the SBA.

18.    The CARES Act provides the following with respect to the amount of reimbursement a participating lender is entitled to receive from the SBA for processing a PPP loan application:

> (P) REIMBURSEMENT FOR PROCESSING –
>
> > (i) IN GENERAL – The Administrator shall reimburse a lender authorized to make a covered loan at a rate, based on the balance of the financing outstanding at the time of disbursement of the covered loan, of –
> >
> > (I) 5 percent for loans of not more than $350,000;
> >
> > (II) 3 percent for loans of more than $350,000 and less than $2,000,000; and
> >
> > (III) 1 percent for loans of not less than $2,000,000.

19.    The CARES Act also directs the Administrator of the SBA to establish a limit on the amount of compensation an agent who assists an eligible recipient in preparing an application for a covered loan is entitled to receive, providing as follows:

> (ii) FEE LIMITS – An agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator.

20. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20816-20817 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120), provides the following with respect to the amount of reimbursement an agent who assists an eligible recipient in preparing an application for a covered loan is entitled to receive, as well as the source from which the payment is to be received:

> c. Who pays the fee to an agent who assists a borrower?
>
> Agent fees will be paid by the lender out of the fees the lender receives from SBA. Agents may not collect fees from the borrower or be paid out of the PPP loan proceeds. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:
>
> i. One (1) percent for loans of not more than $350,000;
>
> ii. 0.50 percent for loans of more than $350,000 and less than $2 million; and
>
> iii. 0.25 percent for loans of at least $2 million.
>
> The Act authorizes the Administrator to establish limits on agent fees. The Administrator, in consultation with the Secretary, determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that lenders receive for making the PPP loans.

21. On March 31, 2020 the U.S. Department of the Treasury issued the "PAYCHECK PROTECTION PROGRAM (PPP) INFORMATION SHEET," and made it available to participating lenders on its website. The information sheet provides as follows with respect to who can be an agent, and how those agents are to be compensated:

**Who can be an agent?**  An agent is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;
- A loan broker; or
- Any other individual or entity representing an applicant by conducting business with the SBA.

**How will agents be compensated?**  Agent fees will be paid out of lender fees.  The lender will pay the agent.  Agents may not collect any fees from the applicant.  The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) may not exceed:

- One (1) percent for loans of not more than $350,000;
- 0.50 percent for loans of more than $350,000 and less than $2 million; and
- 0.25 percent for loans of at least $2 million.

22. LKNU has assisted, as an agent, many of its clients in preparing an application for their PPP loans.

23. On April 6, 2020, LKNU, by and through Tim Leigh, who is a certified public accountant and one of its owners, timely submitted a loan application to the Defendant on behalf of a client, and included an engagement letter setting forth the agency relationship along with the documentation that was required to be submitted with the loan application.

24. On April 7, 2020, LKNU, by and through Leigh, timely submitted another loan application to the Defendant on behalf of a client and included an engagement letter setting forth the agency relationship along with the documentation that was required to be submitted with the loan application.

25. When reviewing the first of the loan applications, Will Pebworth, Regions' Shoals Alabama Area Market Executive in Commercial Banking, informed Leigh that "Regions is not paying agent fees for PPP loans," and requested that Leigh let Regions know if his client wanted to proceed with the Regions PPP application in light of the fact that Regions was refusing to pay agent fees.

26. Although Leigh disagreed with Regions' position but in light of the urgency of getting the applications processed on behalf of clients, Leigh directed Regions to process the loan, informed Regions of the other loan application that LKNU had submitted as an agent, and directed that it be processed too. Additionally, Tim expressed to the Defendant that the agent fee is required to be paid by the lender. Defendants refused.

27. The conduct of Regions has caused Plaintiff and Class Members to go uncompensated for acting as agents assisting clients in applying for PPP loans. The provisions of the PPP loan program accounted for applicant agents being compensated not directly from the struggling businesses in need of the loans, but from the participating program lenders like Regions.

28. The actions and inactions of the Defendants has occurred as a pattern and practice and is on-going even now. Upon information and belief, the Defendants have committed these acts in a uniform and calculated effort for thousands of PPP applications and continue to do so.

## CLASS ALLEGATIONS

**A.   Class Definitions**

29. Plaintiff brings this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and all other persons similarly situated. Plaintiff seeks to represent the following ("Class" and "Class Members"):

**Nationwide Class**:

> All qualified agents in the United States of America who timely assisted with, participated in and/or completed the submission of applications on behalf of clients for PPP loans via the CARES Act to the Defendants and Defendants refused to accept said applications on account of the agency relationship and/or failed to compensate the agents at any time.

30. Excluded from the Class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees, counsel for the Plaintiff in this matter, and the Court personnel in this matter.

31. Plaintiff reserves the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

32. Defendants subjected Plaintiff and the respective Class Members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.

**B.  Numerosity**

33. The proposed Class are so numerous that joinder of all members would be impracticable. The precise number of Class Members for each Class numbers at least in the hundreds, but the numbers are clearly more than can be consolidated in one complaint such that it would be impractical for each member to bring suit individually. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**C.  Commonality**

34. Common questions of law and fact predominate in this matter because Defendants' conduct towards the members of the Class is identical. Defendants uniformly and systematically, through its centralized systems and actions committed the wrongful conduct alleged herein.

35. Plaintiff shares a common interest with all members of the Class in the objectives of the action and the relief sought.

36. Because Defendants' conduct was uniform as to all Class members, the material elements of Plaintiff's claims and those of Class Members are subject to common proof, and the outcome of Plaintiff's actions will be dispositive for the Class.

37. Questions of law and fact that are common to the Class include, but are not limited to, the following:

    a. Whether Defendants' practice of refusing to pay agent fees violates applicable law;

    b. Whether Plaintiff and the Class are entitled to injunctive relief to prevent Defendants from continuing its practice of refusing to pay agent fees;

    c. Whether the named Plaintiff and the Class are entitled to recover damages for Defendants' practice of refusing to pay agent fees.

    d. Did Defendants prioritize their lender fees over agent fees to the detriment of agents;

    e. Whether Defendants unjustly retained agent fees belonging to Plaintiff and the class.

**D.   Typicality**

38. Plaintiff is a member of the Class it seeks to represent. Plaintiff's claims are typical of the respective Class members' claims because of the similarity, uniformity, and common purpose of Defendants' unlawful conduct. Each Class Member has sustained, and will continue to sustain, damages in the same manner as Plaintiff has as a result of Defendants' conduct.

**E.   Adequacy of Representation**

39. Plaintiff is an adequate representative of the Class it seeks to represent and will fairly and adequately protect the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent them. There is no hostility between Plaintiff and the unnamed Class Members.

40. To prosecute this case, Plaintiff has chosen the undersigned law firms, which are experienced in class action litigation and have the financial and legal resources to meet the costs and legal issues associated with this type of litigation.

### F. Requirements of Fed. R. Civ. P. 23(b)(3)

41. The questions of law or fact common to Plaintiff and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the Class. All claims by Plaintiff and the unnamed Class Members are based on the issue of refusal to pay lawful agent fees due to Plaintiff and the Class Members.

42. Common issues predominate when, as here, liability can be determined on a class-wide basis, even if there will be some individualized damage determinations.

43. As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

### G. Superiority

44. A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

   a. Joinder of all Class Members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

   b. Individual claims by Class Members are impractical because the costs to pursue individual claims may exceed the value of what any one Class Member has at stake. As a result, individual Class Members may have no interest in prosecuting and controlling separate actions;

   c. There are no known individual Class Members who are interested in individually controlling the prosecution of separate actions;

   d. The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum;

  e. Individual suits would not be cost effective or economically maintainable as individual actions; and

  f. The action is manageable as a class action.

45. The Class is not so large that it would be unmanageable, and no difficulties are foreseen providing notice to individual claimants because Defendants keeps records of their borrowers at issue and the agents representing prospective Class Members during the class period. Plaintiff will be able to ascertain through Defendants records and well-implemented claims processes, all Class Members. Therefore, both the membership of the Class and the amount of individual damages will be readily ascertainable.

**H.** **Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

46. There is an inherit risk that the prosecution of separate actions by individual members of the Class may lead to inconsistent outcomes that would confront Defendants with potentially incompatible standards of conduct. Either Defendants' alleged practice is wrong for every one of the Class Members or it is right for every one of the Class Members, making this action appropriate for class certification.

47. Because Defendants has acted consistently towards all members of the Class, final equitable and injunctive relief is appropriate with respect to both the Class and Plaintiff's claims and is likewise subject to common proof and adjudication.

48. Based on the foregoing, class treatment is the most fair and efficient form of adjudication for this matter.

**COUNT I**
**UNJUST ENRICHMENT**

49. Plaintiff, on behalf of itself and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

50. Defendants received benefits, in the form of money that it has taken or will take and earned interest on rightfully owed to Plaintiff and the Class.

51. To the extent Defendants failed to remit fees due to Plaintiff and Class Members, or otherwise benefited from the illegal activity in any way, it has been unjustly enriched, to the deprivation of the Plaintiff and Class Members.

52. Defendants received financial benefits not just in the improper conduct of withholding fees, but also in the form of increased interest income on those funds.

53. As a result, a wrongful benefit has been and continues to be conferred on Defendants.

54. Defendants has direct knowledge of this benefit and voluntarily accepted and retained the benefit conferred on it.

55. Defendants will be unjustly enriched if it is allowed to retain the aforementioned benefits, and Plaintiff and each Class Member is entitled to recover the amount by which Defendants were unjustly enriched at their expense.

## COUNT II
## VIOLATIONS OF THE SBA 7(a) LOAN PROGRAM

56. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811, 20816-20817 (April 15, 2020) (to be codified at 13 C.F.R. pt. 120), establishes that agents who submit loan applications on behalf of their clients are to be paid on a sliding scale by the lender, from the fees the lender receives from the SBA.

57. In complete disregard of the PPP loan program requirements, Regions has held applications that were submitted and/or prepared by an agent on behalf of its client hostage, by refusing to process the loan applications unless and until the agent acknowledged that Regions will not be paying any fee to the agent.

58. LKNU meets the agency eligibility requirements set forth in U.S. Department of the Treasury guidance, has submitted PPP loan applications to Regions on behalf of its clients, is entitled to payment for such assistance under the PPP loan program requirements, but Regions refuses to pay LKNU the fee that it is entitled to receive under and pursuant to PPP loan program.

## COUNT III
## INJUNCTIVE RELIEF

59. Plaintiff, on behalf of itself and the Class Members, re-allege and incorporate every paragraph of this Complaint and further allege:

60. This is an action for permanent injunctive relief seeking to enjoin Defendants from failing and refusing to pay agent fees.

61. The foregoing actions and conduct by Defendants continue at present, and will continue unabated, unless and until prohibited by this Court and constitute a violation of law.

62. Plaintiff and the Class have, will or are likely to suffer irreparable harm unless Defendants' practices alleged herein are enjoined.

63. Plaintiff and the Class will suffer irreparable harm if an injunction is not granted as monetary damages cannot force Defendants to correct its improper conduct, change its improper practices or enjoin it from continuing its improper practice.

64. The requested injunction promotes the public interest by furthering the proper application of law and preventing the improper collection of improper charges from unknowing consumers.

65. Accordingly, on behalf of itself and those similarly situated, Plaintiff asks this Court to enjoin Defendants from the conduct alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, demands judgment against Defendants as follows:

1. Declaring this action to be a proper class action maintainable and certifiable pursuant to Rule 23(a) and Rule 23(b)(1) and (2), or Rule 23(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiff and their counsel to be representatives of the Class;

2. Enjoining Defendants from continuing the acts and practices described above;

3. Awarding damages sustained by Plaintiff and the Class as a result of Defendants' practices, together with pre-judgment interest;

4. Awarding punitive damages because Defendants' practices rise to the level of willfulness, maliciousness and recklessness that requires strong punishment and deterrent to a company of the size and stature as Defendants.

5. Finding that Defendants have been unjustly enriched and requiring it to pay all unjust benefits conferred upon Defendants before and after this action was filed to Plaintiff and the Class, together with pre-judgment interest;

6. Awarding Plaintiff and the Class costs, disbursements, expert fees, litigation expenses and allowances for the fees of Class counsel.

7. Awarding such other and further relief the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

*/s/ Jay Aughtman*
Joseph "Jay" H. Aughtman (ASB-8081-A43J)
**Aughtman Law Firm, LLC**
1722 Platt Place

Montgomery, AL 36117
Phone: (334) 215-9873
Fax:    (334) 213-5663
Email: jay@aughtmanlaw.com

Richard D. Morrison (ASB-4889-O47R)
**The Morrison Law Firm, LLC**
418 Scott Street
Montgomery, AL  36104
Phone: (334) 513-1323
Fax: (334) 513-1343
Rick.morrison@morrisonfirm.com

Adam B. Burchell (BUR189)
**Johnson, Paseur & Medley, LLC**
1847 North Wood Avenue
Post Office Box 2760
Florence, Alabama 35630
T: (256) 766-3131
F: (256) 766-3124
Adam.burchell@johnsonpaseur.com

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 28th day of April 2020, I caused a true and correct copy of the foregoing to be filed and served on all parties of record via the Court's CM/ECF filing system.

                        */s/ Jay Aughtman*
                        Of Counsel