FILED
2020 Oct-26  PM 01:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LEIGH KING NORTON &** | ] | |
| **UNDERWOOD, LLC,** *on behalf of* | ] | |
| *itself and all others similarly situated* | ] | |
| *in the United States of America*, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **2:20-cv-00591-ACA** |
| | ] | |
| **REGIONS FINANCIAL** | ] | |
| **CORPORATION, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Before the court is Defendant Regions Bank's ("Regions") motion to dismiss the amended complaint for lack of jurisdiction, under Federal Rule of Civil Procedure 12(b)(1) or, alternatively, for failure to state a claim, under Rule 12(b)(6). (Doc. 15).  Plaintiff Leigh, King, Norton & Underwood, LLC ("LKNU") is an accounting firm that assisted a borrower to take out a loan under the Paycheck Protection Program, a part of the Small Business Act, 15 U.S.C. § 636(a)(36).  (Doc. 13).  LKNU asserts that Regions' failure to pay an agent fee for LKNU's services and the bank's requirement that agents fill out a certain fee disclosure form violate the Small Business Act and amount to conversion and unjust enrichment.  (*Id.*).

After considering the briefs as well as arguments presented at a hearing held on October 13, 2020, the court **WILL GRANT** the motion to dismiss the amended complaint in part as moot, in part for lack of standing, and in part for failure to state a claim.[1]

## I.    BACKGROUND

Regions has moved to dismiss this case not only for lack of subject matter jurisdiction, but also for failure to state a claim.  (Doc. 15).  In considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff.  *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).  But a court deciding a Rule 12(b)(1) motion to dismiss for lack of jurisdiction is not so constrained.  If a defendant argues only that a complaint does not sufficiently allege a basis for subject matter jurisdiction, the court takes the complaint's allegations as true, just as in a Rule 12(b)(6) motion.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1336 (11th Cir. 2013).  But "when a defendant mounts a factual challenge to subject matter jurisdiction, a district

---

[1] The court has subject matter jurisdiction over this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2).  LKNU's amended complaint alleges that there are 100 or more members in the proposed class, 28 U.S.C. § 1332(d)(5)(B), and the amount in controversy exceeds $5,000,000, *id.* § 1332(d)(2).  (Doc. 13 at 2 ¶ 8).  And in response to this court's show cause orders, it has alleged facts establishing minimal diversity, 28 U.S.C. § 1332(d)(2)(A), because members of a class are citizens of Alabama and Florida, and Regions is a citizen of Alabama.  (Docs. 23–25).

court may consider extrinsic evidence and weigh the facts to determine whether it may exercise jurisdiction." *Id.* Because Regions mounts a factual challenge to this court's subject matter jurisdiction, the standards that the court must use in evaluating the Rule 12(b)(1) motion and the Rule 12(b)(6) motion differ. The court will therefore first describe the allegations made in the amended complaint, and then separately describe the evidence that the parties have submitted.

1.  Allegations Made in the Amended Complaint

In March 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act")¸ Pub. L. 116-136, 134 Stat. 281. Section 1102 of the CARES Act created the Paycheck Protection Program to provide loans to small business suffering from the effects of the COVID-19 pandemic by amending the Small Business Act, 15 U.S.C. § 636(a)(36). (Doc. 13 at 4 ¶ 17). The Paycheck Protection Program requires the Small Business Administration to "reimburse a lender authorized to make a covered loan" in various percentages based on the size of the loan. 15 U.S.C. § 636(a)(36)(P)(i). It also provides that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the Administrator." *Id.* § 636(a)(36)(P)(ii). An interim regulation establishes that "[a]gent fees will be paid by the lender out of the fees the lender receives from [the Small Business Administration]." 85 Fed. Reg. 20811-01(III)(4)(c); (Doc. 13 at 8 ¶ 29). The same interim regulation sets a cap on

fees that the lender may pay an agent.  85 Fed. Reg. 20811-01(III)(4)(c) ("The total amount that an agent may collect from the lender for assistance in preparing an application for a [Paycheck Protection Plan] loan (including referral to the lender) may not exceed [specified percentages of the loan depending on the size of the loan].").

LKNU is a public accounting firm that operates as an agent preparing loan applications for small businesses under the Paycheck Protection Program.  (Doc. 13 at 2 ¶ 6, 9 ¶ 32).  LKNU, on behalf of itself and a class of similarly situated agents, sued Regions after Regions refused to pay an agent fee for at least one loan application made under the Paycheck Protection Program.  (*Id.* at 9–10 ¶¶ 33–37).

According to LKNU, on April 6 and 7, 2020, it submitted two complete loan applications to Regions.  (Doc. 13 at 9 ¶¶ 33–34).  In response to the first application, a Regions executive emailed LKNU to inform it that "Regions is not paying agent fees for PPP loans" and to ask whether LKNU still wanted Regions to process the application.  (*Id.* at 9 ¶ 35).  LKNU "expressed to [Regions] that the agent fee is required to be paid by the lender," but "in light of the urgency of getting the applications processed on behalf of clients, [LKNU] directed Regions to process the loan, informed Regions of the other loan application that LKNU had submitted as an agent, and directed that it be processed too."  (*Id.* at 9–10 ¶ 36).

In May 2020—after LKNU filed its initial complaint in this case—Regions began asking borrowers who had been assisted by agents to fill out a fee disclosure form known as Small Business Administration Form 159, representing to borrowers that no agent fees could be paid unless the borrower first completed that form.  (Doc. 13 at 11 ¶ 42).  Form 159 explains that the lender and the borrower must always fill out the form.  (*Id.* at 11 ¶ 43).  In addition, whenever a borrower pays an agent, the agent must also fill out Form 159.  (*Id.*).  But because the Paycheck Protection Program prohibits agents from accepting payments from borrowers and requires the lenders to pay agent fees out of funds received from the Small Business Administration, agents need not fill out Form 159 when submitting Payment Protection Program applications.[2]  (*Id.*).

Regions approved the first of LKNU's two loan applications in early May 2020, and that loan closed in mid-May.  (Doc. 13 at 10 ¶ 37).  The Small Business Administration has paid the processing fees it owes to Regions for that loan.  (*Id.* at 10 ¶ 40).  Yet, according to LKNU, Regions has not paid the agent fees and is conditioning payment of those fees on agents filling out Form 159, despite the fact

---

[2] LKNU argues vigorously that requiring anyone to fill out Form 159 as a condition for payment of an agent fee is a violation of the law.  However, LKNU's own allegations, if taken as true, would establish that Regions can require a borrower to submit the form, even if an agent does not need to fill it out.  (*See* Doc. 13 at 11 ¶ 43 (alleging that the form itself requires a borrower to fill out the form whenever the lender pays an agent in connection with a Small Business Administration loan)).

that agents are not required to fill out that form in connection with applications made under the Payment Protection Program.  (*Id.*).

LKNU asserts state law claims for unjust enrichment and conversion and a federal claim for violation of the Small Business Act 7(a) Loan Program.  (Doc. 13 at 17–19).  It seeks compensatory damages, punitive damages, and permanent injunctive relief enjoining Regions from "failing and refusing to pay agent fees and/or conditioning payment upon an inapplicable Fee Disclosure Form [Form 159]."  (*Id.* at 20–21).

### 2.  Jurisdictional Evidence

After LKNU filed its initial complaint in this case, Regions submitted a declaration from Timothy Monte, an executive vice president.   (Doc. 6-1). Mr. Monte attests that "[s]ince the beginning of the [Paycheck Protection Program], Regions has planned to pay agents' fees . . . provided that the agents provide appropriate documentation verifying their services to borrowers and compliance with applicable requirements."  (*Id.* at 2 ¶ 8).  But as of June 4, 2020, although Regions had funded about $4.8 billion worth of loans under the Paycheck Protection Program, the Small Business Administration had not paid Regions any fees.  (*Id.* at 2 ¶ 5, 3 ¶ 4).  Mr. Monte explained that Regions intended to "promptly" pay agent fees once it received the fees owed by the Small Business Administration.  (*Id.* at 3 ¶ 11).

After LKNU filed its amended complaint, Regions submitted an affidavit by John Johnson, a senior vice president and the Head of Small Business Administration Operations at Regions. (Doc. 15-1). He confirms that Regions asks agents to complete Form 159. (*Id.* at 2–3 ¶ 7). He attests that Regions received the first of its payments from the Small Business Administration on June 15, 2020 and has started disbursing agent fees. (*Id.* at 2 ¶ 6).

Mr. Johnson states that LKNU provided Regions with a completed Form 159 in April 2020, seeking an agent fee of $488. (Doc. 15-1 at 3 ¶ 8). That form was signed only by LKNU. (*Id.* at 13–14). After the borrower signed a Form 159 in June 2020, Regions sent LKNU a check for the $488 agent fee in July. (Doc. 15-1 at 3 ¶¶ 8, 10; *see also id.* at 10–11, 16). LKNU has since deposited the check. (Doc. 18-1). According to Mr. Johnson, Regions is not aware of any other application that LKNU has submitted for payment of agent fees under the Paycheck Protection Program. (Doc. 15-1 at 4 ¶ 11). LKNU has not provided any evidence indicating that it made any other application for agent fees, and indeed has stated outside the pleadings that it withdrew the second loan application based on Regions' failure to timely fund the loan, which meant that LKNU was not entitled to a fee for that loan. (Doc. 26).

## II.    DISCUSSION

Regions seeks the dismissal of the case as moot, for lack of standing, and in the alternative, for failure to state a claim.   (Doc. 15; Doc. 18 at 6–8.)   A Rule 12(b)(1) motion to dismiss attacks the court's subject matter jurisdiction over case.   By contrast, a Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint.   "To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'"   *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   Because the court cannot address the merits of any claims over which it lacks jurisdiction, the court will address the Rule 12(b)(1) motion before turning to the Rule 12(b)(6) motion.

### 1.  Subject Matter Jurisdiction

LKNU's amended complaint alleges that Regions injured it in two ways: (1) by wrongfully refusing to pay an agent fee; and (2) by requiring agents to submit a completed Form 159 as a prerequisite to receiving an agent fee.  (*See* Doc. 13 at 17–20 ¶¶ 71, 76, 80, 83).  Regions contends that LKNU's claims are moot or that LKNU lacks standing to assert them.  (Doc. 15 at 2–7, 16; Doc. 18 at 3).  "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing

cases or controversies." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Standing and mootness are components of an Article III case or controversy. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The court will address the requests for relief arising from the refusal to pay the agent fee first, followed by the requests for relief arising from the use of Form 159.

### a. Payment of the Agent Fee

LKNU alleges that Regions failed to pay it an agent fee to which it was entitled. (Doc. 13 at 17–19 ¶¶ 71, 76, 80). Regions argues that because it has paid LKNU the only agent fee LKNU has requested, LKNU's claims are moot. (Doc. 15 at 2–7). LKNU responds that Regions' voluntary cessation of wrongful conduct is not sufficient to moot LKNU's claims because Regions has not established that it will not repeat its allegedly wrongful conduct. (Doc. 17 at 7–9).

A claim or case becomes moot if, after the commencement of an action, events "create a situation in which the court can no longer give the plaintiff meaningful relief." *Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.*, 162 F.3d 627, 629 (11th Cir. 1998). "The doctrine of mootness derives directly from the [Article III] case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Hall v. Sec'y, Alabama*, 902 F.3d 1294, 1297 (11th Cir. 2018) (quotation marks omitted).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc.*, 528 U.S. at 189 (quotation marks omitted). The standard for determining whether voluntary cessation of conduct moots a case "is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quotation marks omitted).  The party asserting mootness bears the "formidable, heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007) (quotation marks omitted).

To determine whether the moving party has satisfied that burden, the court must consider "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely*, 505 F.3d at 1184.

LKNU alleges that it submitted two loan applications, one of which was approved. (Doc. 13 at 9 ¶¶ 33–34, 10 ¶ 37).  Regions presented evidence that LKNU submitted only one request for an agent fee, which Regions has paid and LKNU has accepted. (Doc. 15-1 at 3–4 ¶¶ 8, 10–11; Doc. 18-1).  At the hearing on this motion,

LKNU argued that it need not submit any evidence controverting Regions' evidence of paying the fee because this court must accept as true the allegations in the complaint. But as the court set out above, Regions has mounted a factual challenge to this court's subject matter jurisdiction, so the court "may consider extrinsic evidence and weigh the facts to determine whether it may exercise jurisdiction." *Houston*, 733 F.3d at 1336. LKNU has not submitted any evidence of a fee to which it is entitled and which Regions has not paid.

The court finds that Regions has met its burden of establishing as moot LKNU's claims for compensatory damages and permanent injunctive relief based on the failure to pay an agent fee. After the commencement of this case, Regions paid LKNU the only agent fee to which LKNU was even arguably entitled. Accordingly, the court cannot afford LKNU any further relief with respect to the claim for compensatory damages or permanent injunctive relief. *See Jews for Jesus, Inc.*, 162 F.3d at 629.

The court rejects LKNU's argument that Regions has failed to prove the cessation of its wrongful conduct. To the extent Regions' conduct was wrongful in the first place, it has carried its burden of establishing that the wrongful conduct will not occur again. *See Friends of the Earth, Inc.*, 528 U.S. at 189; *Sheely*, 505 F.3d at 1184. Although Regions has not conceded liability (and, indeed, contends that LKNU has not even stated a claim), it has presented evidence that it must pay agent

fees out of specific funds it receives from the Small Business Administration, and it paid the fee owed to LKNU as soon as possible after receiving those funds.  LKNU has not attempted to controvert that evidence.  Thus, Regions has shown that the challenged conduct was not a continuing and deliberate practice.  *See Sheely*, 505 F.3d at 1184.  Regions has also shown to the court's satisfaction that its payment of the agent fee was not motivated by a desire to moot this case, but instead by the receipt of the funds from which it must pay agent fees.  *See Sheely*, 505 F.3d at 1188 ("[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction.").

However, although Regions' payment of the agent fee moots the claim for compensatory damages and injunctive relief, it does not moot the claims for punitive damages.  Assuming that Regions' conduct was wrongful, Regions' post-complaint payment of the fee that LKNU was entitled to be paid does not erase any harm that LKNU suffered before the payment.  *See, e.g.*, *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 901 F.3d 1282, 1288 (11th Cir. 2018) (requiring courts awarding punitive damages to consider, among other things, "the ratio between the actual or potential *harm* suffered by the plaintiff and the punitive damages award" and "the difference between the punitive damages awarded by the jury and the civil penalties *authorized* or imposed in comparable cases") (emphases added).  A factfinder could

award LKNU meaningful relief in the form of punitive damages, so LKNU's claims for punitive damages are not moot.  *See Jews for Jesus, Inc.*, 162 F.3d at 629.

Accordingly, the court **WILL GRANT** the motion to dismiss LKNU's claim for compensatory damages and permanent injunctive relief based on Regions' failure to pay an agent fee, and **WILL DISMISS** those claims **AS MOOT**.  However, the court declines to dismiss LKNU's requests for punitive damages as moot.

      *b.  Use of Form 159*

LKNU also challenges Regions' requirement that agents submit a signed Form 159 as a prerequisite to receiving the agent fee.  (Doc. 13 at 10 ¶ 40, 18 ¶ 76, 19 ¶ 80, 20 ¶ 83).  Regions argues that its payment of the agent fee also moots LKNU's claims regarding the use of Form 159 because "LKNU did not find Regions' documentation onerous."  (Doc. 15 at 6).  Whether a requirement is onerous is beside the point: the question for mootness purposes is whether the court could afford meaningful relief on a claim.  *See Jews for Jesus, Inc.*, 162 F.3d at 629. The court will not dismiss the claims relating to the use of Form 159 as moot. However, Regions also argues that LKNU lacks standing to assert these claims. (Doc. 15 at 16; Doc. 18 at 3).  Here, the court agrees with Regions.

"Standing is determined at the time the plaintiff's complaint is filed."  *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1340 (11th Cir. 2014); *see also Summit Office Park, Inc. v. U.S. Steel Corp.*, 639 F.2d 1278, 1282 (5th Cir. Unit A, March 19,

1981)[3] ("[W]here a plaintiff never had standing to assert a claim against the defendants, it does not have standing to amend the complaint. . . .").  To establish standing, a plaintiff must demonstrate the existence of: (1) "an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

At the time LKNU filed this lawsuit, Regions was not requiring agents to complete Form 159.  (Doc. 13 at 11 ¶ 42 ("[I]t was not until the month that followed the initiation of the above styled cause that Regions began circulating SBA Form 159 (the "Fee Disclosure Form") to loan recipients who were assisted by agents . . . .").  Moreover, LKNU itself argues that when it made a loan application in April 2020, it voluntarily submitted a Form 159 despite the fact that Regions was not yet requiring that form.  (Doc. 17 at 3).  Given these facts, LKNU cannot show that, at the time it commenced this action, Regions' actions caused any injury that filing a Form 159 inflicted on LKNU.  *See Spokeo, Inc*, 136 S. Ct. at 1547 (holding that one of the components of standing is an injury "that is fairly traceable to the challenged conduct of the defendant"); *see also Arcia*, 772 F.3d at 1340 ("Standing is determined at the time the plaintiff's complaint is filed.").  The fact that Regions

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

later began requiring agents to fill out Form 159 and that LKNU later amended the complaint cannot cure the lack of standing. *See Summit Office Park, Inc.*, 639 F.2d at 1282; *see also Friends of the Earth, Inc.*, 528 U.S. at 170 ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum."). Accordingly, the court **WILL GRANT** Regions' motion to dismiss the claims relating to the use of Form 159 and **WILL DISMISS** those claims for lack of standing.

  2. Merits

  In light of the court's findings about standing and mootness, the only claims over which the court has subject matter jurisdiction are those requesting punitive damages for Regions' failure to pay an agent fee to LKNU. Although the court found as a fact, in connection with the motion to dismiss for lack of jurisdiction, that Regions has paid LKNU the only agent fee LKNU has sought from Regions, the court cannot consider that fact in determining whether the complaint states a claim. *See Butler*, 685 F.3d at 1265. Instead, the court accepts as true all well-pleaded allegations made in the complaint and disregards all of the evidence submitted in connection with the Rule 12(b)(1) motion. *See id.*

### a. Violation of the Small Business Act

LKNU claims that Regions' failure to pay the agent fee violates the Small Business Act.  (Doc. 13 at 19).  Specifically, it asserts that Regions has disregarded the Paycheck Protection Program's requirements by refusing to process loan applications until the agent acknowledges that Regions will not pay an agent fee. (*Id.* at 19 ¶ 80).  Regions contends that this claim fails as a matter of law because the Small Business Act does not provide for a private cause of action.  (Doc. 15 at 8–9). In a supplemental brief, Regions also argues that under a recent district court opinion, LKNU's claim also fails because even if a private cause of action exists, the Small Business Act does not require lenders to pay agents a fee.  (Doc. 19).  The court agrees with both contentions.

Assuming for the moment that a private cause of action to enforce the requirements of the Paycheck Protection Program exists, LKNU cannot establish that Regions' alleged conduct violated those requirements.  The Small Business Act provides that "[a]n agent that assists an eligible recipient to prepare an application for a covered loan may not collect a fee in excess of the limits established by the [Small Business Administration's] Administrator."  15 U.S.C. § 636(a)(36)(P)(ii). This language does not provide that anyone—the lender or the Administrator—must pay fees to agents that assist eligible recipients.  Nor does the interim regulation impose any such requirement.  *See* 85 Fed. Reg. 20811-01(III)(4)(c) (2020).

Although that regulation states that "[a]gent fees will be paid by the lender out of the fees the lender receives from" the Small Business Administration, it immediately adds that "[t]he total amount that an agent may collect from the lender for assistance in preparing an application for a PPP loan (including referral to the lender) *may not exceed* [various percentages of the loan amount depending on the size of the loan]." *Id.* (emphasis added). Moreover, the regulation acknowledges that the Small Business Act "authorizes the Administrator to establish limits on agent fees"—not that it requires the payment of fees.

If the plain language of the statute and the regulation were not enough, the language of the clause preceding § 636(a)(36)(P)(ii) would convince the court. In that clause, the Small Business Act use mandatory language to provide that "the Administrator *shall* reimburse a lender authorized to make a covered loan at [specific rates depending on the size of the loan]." 15 U.S.C. § 636(a)(36)(P)(i) (emphasis added); *see Murphy v. Smith*, 138 S. Ct. 784, 787 (2018) ("[T]he word 'shall' usually creates a mandate, not a liberty . . . ."). The clause immediately following that one provides a limit on the fee an agent may collect. *See* 15 U.S.C. § 636(a)(36)(P)(ii). If Congress had wanted to require lenders to pay agent fees, it could easily have provided that lenders "shall" pay those fees, just as it provided that the Administrator "shall" pay fees to lender. *See Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits

17

it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."); *cf. Murphy*, 138 S. Ct. at 787 ("If Congress had wished to afford . . . more discretion in this area, it could have easily substituted 'may' for 'shall.'").  It did not do so.  Accordingly, the court finds that the Small Business Act does not make payment of agent fees mandatory.

Even if the Small Business Act made payment of agent fees mandatory, that Act does not create a private right of action to enforce that requirement.  "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress."  *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  "[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."  *Cannon v. Univ. of Chicago*, 441 U.S. 677, 688 (1979).

LKNU does not assert that the Small Business Act expressly creates a private right of action, but instead argues that the CARES Act—which amended the Small Business Act to add the Paycheck Protection Program—demonstrates legislative intent to create a private right of action.  (*See* Doc. 15 at 10–14).  The Supreme Court has set out several factors to consider when determining "whether a private remedy is implicit in a statute not expressly providing one."  *Cannon*, 442 U.S. at 689 n.9.

To determine whether Congress has created a private right of action, the court must decide whether the statute "displays an intent to create not just a private right but also a private remedy." *Cannon*, 442 U.S. at 689 n.9. Without a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87. Those factors are whether: (1) the statute creates of a federal right in favor of the plaintiff; (2) the statute shows explicit or implicit legislative intent to create or deny a remedy; (3) implication of a remedy for the plaintiff is consistent with the purpose of the statute; and (4) "the cause of action [is] one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law." *Id.*

Here, these factors clearly show that the Small Business Act does not create a private right of action for a borrower's agent to enforce the requirements of the Paycheck Protection Program. First, as discussed above, the statute does not create a right for an agent to receive a fee for assisting a borrower; instead, it imposes limits on the amount an agent may receive. Without a right, no cause of action can exist. But even proceeding on the assumption that the Act does create such a right for agents, neither the statute nor—to the extent relevant—the interim regulation expressly creates a remedy for a violation of an agent's right to a fee. *See* 15 U.S.C. § 636(a)(36); 85 Fed. Reg. 20811-01(III)(4)(c); *cf. Alexander*, 532 U.S. at 291

("Language in a regulation may invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not.").

Nor can the court discern any intent to implicitly provide a remedy. Nothing in the language of the statute or the regulation even hints at a private remedy for agents who are denied a fee for helping an eligible borrower. By contrast, the Small Business Act does create a right of action for injunctive relief by the Administrator in particular circumstances. *See* 15 U.S.C. § 687c(a) (expressly creating a judicial remedy for the Administrator to seek injunctive relief "[w]henever . . . any . . . person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of this chapter"). Given Congress' creation of a judicial remedy for the Administrator to enforce the terms of the Act, its lack of an express remedy for any other person speaks volumes.

Finally, it would be inconsistent with the purpose of the Small Business Act to imply a remedy for agents of borrowers. The Small Business Act's declaration of policy states in relevant part that Congress intends the Act to

> aid, counsel, assist, and protect, insofar as is possible, the interests of small-business concerns in order to preserve free competitive enterprise, to insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government . . . be placed with small-business enterprises, to insure that a fair proportion of the total sales of Government property be made to such enterprises, and to maintain and strengthen the overall economy of the Nation.

15 U.S.C. § 631(a). The CARES Act did not amend that declaration of policy or make its own declaration of policy. *See* Pub. L. 116-136, 134 Stat. 281.

As far back as 1966, the former Fifth Circuit held, relying on that declaration of policy, that the Small Business Act did not create a private right of action for a company asserting that another company misrepresented itself as a small business in order to secure a contract. *Royal Servs., Inc. v. Maint., Inc.*, 361 F.2d 86, 87 (5th Cir. 1966). The former Fifth Circuit explained that the purpose of the Act is "public in character, viz., the preservation and expansion of full and free competition to insure the Nation's economic well-being and security." *Id.* And because other acts intended to preserve free competition expressly created a private cause of action "in clear and unmistakable language," Congress's failure to use such language in the Small Business Act showed its intent not to create a private cause of action for violations of that Act. *Id.* The Eleventh Circuit expressly reiterated that holding in *Tectonics, Inc. of Florida v. Castle Construction Company, Inc.*, 753 F.2d 957, 960 (11th Cir. 1985).[4]

The Eleventh Circuit has not yet published an opinion about whether either the Small Business Act or the CARES Act amendment to the Small Business Act

---

[4] The Eleventh Circuit has also held that "no private right of action exists for a violation of the [Small Business Investment Act] or the regulations." *United States v. Fid. Capital Corp.*, 920 F.2d 827, 838 (11th Cir. 1991). That case is about the Small Business Investment Act of 1958, 15 U.S.C. §§ 661–697c, which is related but distinguishable from the Small Business Act of 1953, 15 U.S.C. §§ 631–657u.

creates a private right of action for agents denied an agent fee.  However, this court finds that the reasoning behind *Royal Services* and *Tectonics Incorporated of Florida* holds true in this case.  Nothing in the Small Business Act or the CARES Act implies the existence of a remedy for agents denied an agent fee.

In short, the Small Business Act does not create a private cause of action for agents denied an agent fee after assisting an eligible borrower.  Accordingly, the court **GRANTS** Regions' motion to dismiss the federal claim for punitive damages and **WILL DISMISS** that claim **WITH PREJUDICE** for failure to state a claim.

### b.  Unjust Enrichment

LKNU seeks punitive damages based on unjust enrichment because it "provided Regions with the benefit of its knowledge that its client met the requirements and was qualified to receive a [Paycheck Protection Program] loan, with the benefit of preparing its client's [Paycheck Protection Program] loan application and required materials in a complete and consistent manner, and with the benefit of the referral of its client to Regions when LKNU submitted the [Paycheck Protection Program] loan application and materials."  (Doc. 13 at 17 ¶ 68).  Regions contends that this fails to state a claim because LKNU does not adequately allege that Regions knowingly accepted a benefit from LKNU or that LKNU conferred a benefit on Regions.  (Doc. 15 at 9–12).  Regions also argues that because the Small

Business Act does not provide a private right of action, LKNU cannot "bootstrap" a claim "onto a common law cause of action." (*Id.* at 11–12).

As an initial matter, Regions appears to argue that because the Small Business Act does not provide a private right of action, LKNU cannot assert a state law claim to enforce any rights provided by the Act. (*See* Doc. 15 at 11). This is essentially an argument that the Small Business Act preempts any state law cause of action to enforce rights provided by the Act. Putting aside the fact that the Small Business Act does not require the payment of agent fees, the court notes that a statute's failure to provide a right of action does not automatically preempt state law causes of action based on rights provided by that statute. *See Tectonics, Inc. of Fla.*, 753 F.2d at 964 ("Congress, by enacting the Small Business Act, did not preempt the field so as to preclude a state cause of action based upon the Act . . . ."). The court therefore rejects Regions' argument that the lack of a federal right of action precludes any state law claim based on that federal law.

The court will therefore proceed to the merits of LKNU's claim. An unjust enrichment claim under Alabama law requires a plaintiff to show: "(1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Invs., LLC*, 77 So. 3d 139, 145 (Ala. 2011) (quoting *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008)). Regions contends that it did not knowingly

accept a benefit from LKNU because LKNU worked for the borrower, not for Regions.  (Doc. 15 at 10).  But it acknowledges that LKNU also alleges that Regions accepted the benefit of LKNU's "knowledge that its client met the requirements and was qualified to receive a [Paycheck Protection Program] loan, the benefit of preparing its client's [Paycheck Protection Program] loan application . . . and with the benefit of its referral of its client to Regions."  (*Id.*).  The court concludes that, at this stage, those are benefits that LKNU conferred on Regions, and that Regions knowingly accepted from LKNU.

Regions contends that even if the benefits listed above would suffice, the amount of recovery is limited to the value of the benefit conferred on the defendant, and LKNU has not tied "the dollar amount of the agent fees at issue . . . to these alleged benefits."  (Doc. 15 at 11).  That argument relates to the amount of damages that LKNU might be entitled to receive if it can prevail on the unjust enrichment claim, not to LKNU's ability to state a claim for unjust enrichment.  LKNU may state a claim for unjust enrichment without establishing the precise monetary value of the benefit it conferred on Regions.

However, LKNU still fails to state a claim for unjust enrichment.  The final element of an unjust enrichment claim is "a reasonable expectation of compensation" by the party who conferred the benefit.  *Matador Holdings, Inc.*, 77 So. 3d at 145.  At the motion hearing, the court asked LKNU how it could have

reasonably expected compensation for its work as an agent, given that Regions notified LKNU that it was not paying agent fees and asked whether LKNU still wanted to proceed with the loan application.   *See Tazoe v. Airbus S.A.S.*, 631 F.3d 1321, 1336 (11th Cir. 2011) (providing that the court must provide the plaintiff with an opportunity to respond before dismissing a claim on grounds not raised by the defendant).  LKNU responded that it had a reasonable expectation of compensation because of its belief that the Small Business Act requires lenders to pay agent fees.

But as set out above, the Small Business Act plainly does not require lenders to pay agents.  LKNU's belief that the Small Business Act required Regions to compensate it was not reasonable.  Even if the Small Business Act did require lenders to pay agent fees, LKNU's own allegations foreclose any reasonable expectation of compensation.  The amended complaint expressly alleges that when LKNU submitted its clients' loan applications, a Regions representative "informed [LKNU] via electronic mail that 'Regions is not paying agent fees for [Paycheck Protection Program] loans,' and requested that [LKNU] let Regions know if his client wanted to proceed with the Regions [Paycheck Protection Program] application in light of the fact that Regions was refusing to pay agent fees."  (Doc. 13 at 9 ¶ 35).  LKNU further alleges that "[a]lthough [LKNU] disagreed with Regions' position, but in light of the urgency of getting the applications processed on behalf of clients, [LKNU] directed Regions to process the loan, informed Regions

of the other loan application that LKNU had submitted as an agent, and directed that it be processed too.  Additionally, [LKNU] expressed to [Regions] that the agent fee is required to be paid by the lender.  [Regions] refused."  (Doc. 13 at 9–10 ¶ 36).

These allegations foreclose any argument that LKNU could have reasonably expected compensation for its work as an agent.  Regions expressly stated that it was not paying agent fees, and specifically asked LKNU if it still wanted to submit the application.  LKNU, knowing that Regions was not paying agent fees, still submitted two loan applications.  No reasonable factfinder could conclude that LKNU reasonably expected to be compensated for its work as a borrower's agent under these facts.

Accordingly, the court **WILL GRANT** Regions' motion to dismiss and **WILL DISMISS** the unjust enrichment claim **WITHOUT PREJUDICE**.

### c. Conversion

LKNU contends that Regions' failure to pay the agent fee amounts to conversion because the Small Business Administration has paid Regions the lender's fees for issuing the loan, but Regions has withheld payment of the agent fee that is supposed to be taken out of the lender's fee.  (Doc. 13 at 18–19 ¶ 77).  Regions argues that this does not state a claim for conversion because under Alabama law, a

claim for conversion of money exists only if the money is specifically sequestered or specifically identifiable.[5]  (Doc. 15 at 12–13).

A plaintiff asserting a claim of conversion under Alabama law must establish "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse."  *Ex parte Anderson*, 867 So. 2d 1125, 1129 (Ala. 2003). "Generally, an action will not lie for the conversion of money. However, if the money at issue is capable of identification, then a claim of conversion may be appropriate."  *Greene Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 898 (Ala. 1991); *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303 (11th Cir. 2010) ("The Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification.").  A plaintiff may state a claim for conversion of money "only where there is an obligation to deliver the specific pieces of the money in question or money that has been specifically sequestered, rather than a mere obligation to deliver a certain sum."  *SouthTrust Bank v. Donely*, 925 So. 2d 934, 940 (Ala. 2005) (quotation marks omitted).  To be capable of identification, money must be "traceable to a special account" or come from "segregated sources."  *Id.* at 898–99 (footnote omitted).

---

[5] Regions again argues that LKNU is attempting to circumvent the Small Business Act's lack of a private right of action by bringing a state law claim based on the alleged right to payment that the Small Business Act provides.  (Doc. 15 at 12).  The court rejects this argument for the same reason as set out above.

The Eleventh Circuit has held that under Alabama law, a conversion claim for money will survive only if "the money itself, not just the amount of it, [is] specific and capable of identification." *Edwards*, 602 F.3d at 1304. To satisfy that requirement, the money must be "segregated in a fashion that would permit matching them up to each individual plaintiff." *Id.* at 1305. Examples of specific and readily identifiable money are "money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum." *Id.* at 1304 (quoting *Gray v. Liberty Nat. Life Ins. Co.*, 623 So. 2d 1156, 1160 (Ala. 1993)).

With respect to funds that are identifiable because they have been segregated in a special account, the Alabama Supreme Court has quoted with approval a federal district court opinion finding that escrowed funds were sufficiently identifiable because they had been "segregated from all other funds in the universe." *Covington v. Exxon Co., USA*, 551 So. 2d 935, 939 (Ala. 1989) (quotation marks omitted). In the state court case, the Supreme Court ultimately held that a plaintiff had not established sufficient segregation of the funds to permit identification because the contested funds had been "commingled" with other funds and "were never segregated into a separate account." *Id.* By contrast, the Alabama Supreme Court has held that a plaintiff stated a claim for conversion where he alleged that the

contested funds had been "specifically deposited in [a] lunchroom account[ ] to pay for the high school's breakfast and lunch programs." *Greene Cty. Bd. of Educ. v. Bailey*, 586 So. 2d 893, 899–900 (Ala. 1991). In *Greene*, the Court found that the funds "were directly traceable to a special account." *Id.* at 900. The Eleventh Circuit in *Edwards* relied on *Covington* and *Greene* to conclude that the plaintiffs failed to state a claim for conversion of money where they did not "allege that the withheld [money was] ever 'sequestered' from other monies collected by the defendants." 602 F.3d at 1305.

The Small Business Act's interim regulation requires that "[a]gent fees will be paid by the lender out of the fees the lender receives from [the Small Business Administration." *See* 85 Fed. Reg. 20811-01(III)(4)(c). The amended complaint alleges that the Small Business Administration has paid Regions the lender's fees, and therefore is able to pay the agent's fee. (Doc. 13 at 10 ¶ 40). But the amended complaint does not allege that the Small Business Administration paid those fees into any specific account or special fund, or that Regions otherwise sequestered the funds. (*See generally id.*). LKNU contends that because the funds "emanate[ ] from a specifically identified source"—*i.e.*, the processing fees that the Small Business Association pays lenders under the Paycheck Protection Program—the funds are specific and identifiable. (Doc. 17 at 16–17). But the fact that money "emanates" from a specific source is not enough; the funds themselves must be identifiable,

either because they are physically identifiable or because they have been entirely sequestered from all other funds.  Because LKNU does not make that allegation, the court **WILL GRANT** Regions' motion to dismiss the conversion claim and **WILL DISMISS** that claim **WITHOUT PREJUDICE**.

### c.  CONCLUSION

The court **WILL GRANT** the motion to dismiss the amended complaint. LKNU lacks standing to assert its claims that Regions wrongfully requires agents to submit Form 159; accordingly, the court **WILL DISMISS** those claims **WITHOUT PREJUDICE** for lack of standing.  LKNU's claims for compensatory damages and injunctive relief are moot because Regions has presented evidence that it has paid the only agent fee LKNU has requested; accordingly, the court **WILL DISMISS** those claims **WITHOUT PREJUDICE** as moot.

As to the merits, the court **WILL GRANT** Regions' motion to dismiss LKNU's federal claim for punitive damages **WITH PREJUDICE** for failure to state a claim.  The court **WILL GRANT** Regions' motion to dismiss LKNU's state law claims for punitive damages **WITHOUT PREJUDICE** for failure to state a claim.

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this October 26, 2020.

_____

**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE